## BRENT vs. REEVES ET ALS.

APPEAL FROM THE COURT OF THE FIFTH DISTRICT, THE JUDGE OF THE SIXTH PRESIDING.

Where the sole heir of a succession has sold a part of the real estate; and afterwards suit is instituted to recover the wife's *dot*, or *dower*, which is referred to arbitrators who decide that the whole of the land and real property of the succession, "*not heretofore disposed of*," be sold to satisfy the claim for dower, the portion first sold by the heir will (under the decision) be exempt from the wife's claim, although she had a tacit mortgage on all the estate for her dower.

An error on the part of arbitrators in relation to the facts on which their judgment was rendered, cannot control the decretal part of that judgment. The judgment must be carried into effect according to the plain import of the language used.

An attorney at law, who attends a board of commissioners and obtains the confirmation of the title to a valuable tract of land, may receive a part of the land in payment of his services, without incurring the penalty of the law, prohibiting attorneys from making bargains with their clients for a share of the property gained in a suit or depending on its result.

An attorney at law may enter into any contract, that any other person may, for services rendered out of court, and not connected with his duties as attorney at law.

This suit is brought to obtain the partition of a tract of land, held in common by the plaintiff and defendants. The plaintiff claims one-sixth of the whole tract of a league square, situated on the Vermilion River, in the parish of Lafayette. The defendant, Reeves, set up title to the whole tract, and resists the plaintiff's claim to any portion of it.

The two parties derive their titles from the same source, as follows, viz. One Thomas Nicholson purchased, on the 16th of October, 1802, of an Indian chief, named *Ashnoyo*, a league square of land, fronting on the river Vermilion. On the 29th of April, 1816, Congress confirmed the title to the land to the original grantee's heir. But, on the fifth of March, 1815, Rufus Nicholson, the only son and heir of Thomas Nicholson, then deceased, sold and conveyed to one James Miller, one-third of the league square of land, by public act, which was duly recorded in the parish of St. Mary.

On the 26th of April, 1815, James Miller made a contract of exchange with William L. Brent, by which he sold and conveyed to him the one-half of his third in the league square. The act of sale and exchange was recorded in the parish of St. Martin, before the parish of Lafayette was taken from it. In the year 1795, Thomas Nicholson, the ancestor and original grantee intermarried with Isabelle Broussard, then widow of Pierre Lapointe. The wife brought into marriage, as dower, one thousand three hundred and sixteen dollars, as estimated in the marriage contract. In 1807, or 1808,

Nicholson died, leaving, as sole heir, a son, Rufus Nicholson. A final settlement of his succession was made in 1811.

The wife, again a widow, sold all her rights against the succession of her husband for her dotal property, on the 30th August, 1823, to one John Reeves, for eight hundred dollars, together with all her right of tacit mortgage on the immoveable property of the succession.

A difficulty arose between Reeves, the vendee, and the heir, and the former commenced suit in the probate court, in the parish of St. Mary, to enforce his claim and rights against Nicholson's succession. On the third of March, 1824, he agreed to dismiss his suit, and all the matters in controversy were referred to arbitrators, who, in the following June, awarded to Reeves, in right of the widow Broussard, one thousand three hundred and sixteen dollars and interest, with a tacit mortgage on all the acquest and gains of the community between her and her late husband that remained undisposed of. This award was made the judgment of the district court in the parish of St. Mary, in October, 1824. In January, following, Reeves sued out execution, and levied it on this tract of a league square and another tract of twelve arpents by forty, which he purchased at the sheriff's sale for five hundred dollars. On the 29th of September, 1826, John Reeves sold and conveyed the present tract to Joseph Reeves, the defendant. The following are the literal terms of the *award* and judgment under which the defendant, Reeves, claims the whole tract of land, viz. "That John Reeves recover from Rufus Nicholson one thousand three hundred and sixteen dollars. The land and real property belonging to the succession of Thomas Nicholson and not heretofore disposed of either by judicial sale or by the act of the parties, should be seized and sold to satisfy the judgment; and if there should remain any property after satisfaction of said judgment, belonging to the succession and undivided or unsold that the same should be equally divided between Reeves and Nicholson; but that said Reeves should, in no case, have recourse against Nicholson for any balance of the judgment remaining due and unpaid, after all the property of the succession is exhausted," &c.

The district court ordered the partition of the tract of land in question, as prayed for in the petition; and the defendant, Reeves, appealed.

N. B. This cause was argued by brief on both sides.

*Simon,* and *Brent, in propria persona,* for the plaintiff.

1. The land claimed by the petitioner was not included in the judgment of the arbitrators, which directed all the lands and real property of the succession, *"not heretofore disposed of,"* to be sold to satisfy the wife's claim for dower. The petitioner's title accrued long before this judgment; consequently the land he claims had been disposed of, and was no longer a part of the succession.

2. The petitioner could not have been affected by this judgment and the sale under it, because he was no party to the suit. The judgment did not form *res judicata* as to him, and his rights cannot be affected by it.

3. By the terms of the judgment of the arbitrators in the case of Reeves *vs.* Nicholson's succession, the wife's tacit mortgage, is relinquished as to all the lands and real property disposed of at the time it was rendered. The petitioner's title accrued ten years before.

4. The petitioner is in the constructive possession of the land claimed, under a valid deed recorded in the parish where the land was situated at the time of the execution of the deed.

5. The consideration he gave was legal and good. The act prohibiting attorneys at law from taking fees, or an interest depending on the event of a suit, does not apply to this case.

*Bowen, contra.*

1. The plaintiff's title is illegal, invalid and void, having been obtained for professional services as attorney at law, in procuring the confirmation of the title to the land in controversy, and receiving a share of it for his fee. See *Act of 31st March,* 1808, § 7. *Livingston* vs. *Cornell,* 2 *Martin,* 281.

2. Parol evidence is admissible to show that the consideration of Brent's title is illegal and his claim void. But it is

objected that Rufus Nicholson's testimony cannot be received to contradict his written act to Miller, who conveyed to Brent. The defendants are not parties to, or bound by, it. And it is attacked on the ground of fraud, which may be proved by parol; and the declarations of the vendor are good to show fraud in him. See 2 *Martin, N. S.* 13.

3. The title of the defendant is superior to plaintiff's, admitting his to be legal. The defendant holds under a sale to satisfy a mortgaged debt, existing anterior to plaintiff's title. His title is not recorded where the property lies. A notarial act concerning immoveable property can have no effect against third persons until it is recorded in the parish where such property is situated. See *Act 24th March,* 1810, § 7. 2 *Moreau's Digest,* 286.

*Porter, J.* delivered the opinion of the court.

One Thomas Nicholson, who intermarried with a certain Isabelle Broussard, died about the year 1808 or '9, leaving his widow alive, and his estate responsible to her for the sum of one thousand three hundred and sixteen dollars, which she had brought, as dower, into marriage.

His sole heir was Rufus Nicholson, his son; and among the property left by him, was a claim to a cypress swamp, which he had acquired by purchase from the Indians previous to the change of government. On the 26th of March, 1815, the heir sold to one James Miller the third of the tract of land already mentioned, and he in the following month, by a contract of exchange, alienated to the petitioner the one-half of that portion of the land which he had acquired from the son and heir.

This sale was made previous to any settlement with the widow for her dower, and she, in the year 1823, sold to one John Reeves all the right, title and interest which she had in that dower, and subrogated him to all claims which she derived from it.

He exercised the right thus conferred by commencing a suit against the heir. The parties referred the matters in contest between them to arbitrators. The arbitrators reported

2

WESTERN DIST.
September, 1831.

BRENT
vs.
REEVES ET ALS.

one thousand three hundred and sixteen dollars to be due the assignee. The court homologated the report, and rendered judgment accordingly. Under this judgment, Reeves took out execution, levied it upon the tract of land in question, and became the purchaser thereof at public sale.

The action is brought for a partition, and one of the defendants, who purchased from Reeves, denies that the plaintiff has any right or title to the premises. The other defendant, who is the representative of Miller, under whom the petitioner claims, admits the legality of this demand, and declares his readiness to acquiesce in it.

Where the sole heir of a succession has sold a part of the real estate, and afterwards suit is instituted to recover the wife's dot or dower, which is referred to arbitrators, who decide that the whole of the land and real property of the succession, "not heretofore disposed of," be sold to satisfy the claim for dower; the portion first sold by the heir will (under the decision) be exempt from the wife's claim, although she had a tacit mortgage on all the estate for her dower.

If the case stood before us on the mere question of the right of the widow to be paid her dower, and the effect of a sale made to enforce her privilege, it would present no difficulty in the decision. The plaintiff, however, insists that, by the terms of the award, the proportion of the property acquired by Miller was expressly excepted from the claim of dower. On the correctness of this position the whole case turns. But, previous to examining it, we must notice an objection made to the plaintiff's title on an allegation that it was fraudulently obtained.

It appears, from the evidence, that the consideration which Miller gave for the portion acquired by him, was his services before the board of commissioners of the United States in obtaining a confirmation of the title. It is insisted, on the part of the appellant, that such consideration was illegal, and rendered the contract void. Brent is attempted to be connected with it, and it is asserted that he was in partnership with Miller; and that the forms in which he clothed the transaction were used to cloak his agency, and protect him from the penalties of the law.

An attorney at law, who attends a board of commissioners and obtains the confirmation of the title to a valuable tract of land, may receive a part of the land in payment of his services, without

The act of 1808, which we have been referred to, provides, that if any attorney makes a bargain with a plaintiff or defendant, depending on the event of a suit, to receive any of the property in dispute, the agreement shall be void; and the attorney stricken from the rolls of the court. This is a highly penal statute, and cannot be extended to cases not within its letter, and without its spirit. There was neither plaintiff

or defendant here to bargain with, nor suit pending, nor matter in dispute. The services were not those which can alone be performed by attorneys. They were in relation to matters not exclusively belonging to the profession. We know of no law which prevents an attorney from making the same contract that any other person may, for services out of court, and not connected with, or making a part of his duty as attorney at law. He may buy, and he may sell, on the same terms, and do business on commission for the same compensation that any other person might. If, in doing these things, he make contracts which are iniquitous and unjust, the nullity is relative, and third parties have no concern with it. The prohibition in the statute making null and void all contracts about property in dispute, and suits pending in court, certainly does not extend to agreements about any thing else.

The case, as we have already said, turns on the solution of the question, whether the arbitrators, by their award, exclude the portion of the land claimed by the plaintiff, from the privilege for dower. It is necessary to refer to the report, and cite those parts which relate particularly to this matter.

After settling the amount due to the assignee, and enumerating property, which had been already divided between the son and the widow, the award proceeds to state, "that there yet remains undivided and unsold, a tract of land, twelve arpents front by the depth of forty, and a large tract, supposed to include a cypress swamp, formerly purchased of the Indians." It further declares, "that Reeves, in right of the widow, was entitled to judgment for one thousand three hundred and sixteen dollars, and had a tacit mortgage upon all the property which remained of the acquests and gains." It then proceeded to adjudge and decree that Reeves should receive the said sum, "and that all the land and real property belonging to the succession, not heretofore disposed of, either by judicial sale or by the act of the parties in the aforesaid partition, should be seized and sold to satisfy this judgment."

The portion which the plaintiff claims in the tract was disposed of previously to this award; and he insists that, by the

WESTERN DIST.
September, 1831.

BRENT
vs.
REEVES ET ALS.

incurring the penalty of the law prohibiting attorneys from making bargains with their clients for a share of the property gained in a suit, or depending on its result.

An attorney at law may enter into any contract that any other person may, for services rendered out of court, and not connected with his duties as attorney at law,

BRENT
vs.
REEVES ET ALS.

An error on the part of arbitrators, in relation to the facts on which their judgment was rendered, cannot control the decretal part of that judgment. The judgment must be carried into effect according to the plain import of the language used.

terms of it, he was protected from any right acquired by an execution issuing under the judgment homologating the award. From the language used by the arbitrators, it is pretty evident that they acted under the idea that the whole of the cypress swamp was still in possession of the son and heir, and no part of it was sold. Still, by the language used in the decree, the plaintiff was expressly restricted in the satisfaction of the judgment to such portions of the property as might then be unsold. Our inquiry has been, whether an error, on the part of the arbitrators, of the facts on which their judgment was rendered, can control the decretal part of that judgment; and we have concluded it cannot. It has been, indeed, contended, and the argument ably pressed on us, that the intention of the arbitrators was to exclude only such portions of the property from the operation of the execution as they knew were already disposed of by the heir. This may be true; but we gather from the award another intention strongly indicated on their part, and that was, to confine the responsibility of the heir to such portions of the common estate as might then be in his hands. And we feel quite unable to say what might have been their decision, had they known, at the time they acted on the case, those facts which this suit has developed. But, without going into such inquiry, we are satisfied, that while the judgment stands unreversed, which, in express terms, excludes the land claimed by the plaintiff, from execution, that it must be carried into effect, according to the plain import of the language used.

This opinion disposes of the point in relation to the right of the defendant to yet enforce the mortgage of the wife on the premises. The terms of the award appear to us, to protect the portion sold from execution, whether there was sufficient of the common property to satisfy the judgment or not.

As to the objections made of the defect in the registry of the plaintiff's title, there is, we think, this satisfactory answer to it. The plaintiff, in execution, could not acquire under it any title to property which was not legally subject to its operation; and he could not transmit to his vendee a better title than he possessed. The latter, therefore, does not stand

in a situation to object to the neglect of a previous purchaser to record his sale.

WESTERN DIST.<br>*September.* 1831.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.